## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **JOSE GUILLERMO LOM LAUREANO, VICTOR FELIPE SANCHEZ MORENO, OMAR ALEJANDRO RANGEL MONTOYA, JOSE EMMANUEL LOM LAUREANO and JOSE FRANK LOM LAUREANO,** | : : : : : : : |
|  | : |
| **Plaintiffs,** | : |
|  | : |
| **v.** | : |
|  | : |
| **20/20 LANDSCAPING AND TREE SERVICE, LLC and BLAIR CURTIS CRESS, JR.** | : : : |
|  | : |
| **Defendants.** |  |

**Civil Action No.: _____**

**JURY TRIAL DEMAND**

## COMPLAINT

### NATURE OF ACTION

1.     This is a civil action brought by Plaintiffs Jose Guillermo Lom Laureano, Victor Felipe Sanchez Moreno, Omar Alejandro Rangel Montoya, Jose Emmanuel Lom Laureano and Jose Frank Lom Laureano to enforce contractual and statutory rights guaranteed by Pennsylvania and federal law to the payment of full wages, including full overtime premium compensation, for all hours worked and for other damages arising out of their employment as landscape laborers in western Pennsylvania on a seasonal basis during the years 2015-2018 with Defendants 20/20 Landscaping & Tree Service, LLC (hereinafter "20/20 Landscaping") and its principal Blair Curtis Cress, Jr. (hereinafter "Defendant Cress").

2.     Plaintiffs are each Mexican nationals who were employed by Defendant 20/20 Landscaping and Defendant Cress pursuant to the federal H-2B temporary non-agricultural

worker visa program, which allows U.S. employers to hire foreign workers subject to specified minimum terms and conditions of employment established by the United States Department of Labor ("DOL") where the employer has demonstrated that there are no U.S. workers are available for the jobs.

3.     Plaintiffs seek redress for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"); the Pennsylvania Minimum Wage Act  of 1968 ("MWA"), 43 P.S. §§ 333.101-115; the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1-260.12; breach of contract and unjust enrichment; and violations of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981.

4.     Plaintiffs' FLSA claims are asserted as a representative action under FLSA Section 16(b), 29 U.S.C. §  216(b).

5.     Plaintiffs' Pennsylvania Wage Payment Collection Act ("WPCL") claims are brought for and on behalf of themselves and other employees similarly situated under WPCL Section 9.1(b), 43 P.S. § 260.9(a)(b).

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1343, 1367 and pursuant to 29 U.S.C. § 216(b).

a.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 since Plaintiffs' state claims arise out of the laws of the United States, including claims pursuant to the FLSA and 42 U.S.C. § 1981.

b.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 since the construction of the terms of contracts for employment of temporary foreign non-

agricultural workers pursuant to the federal H-2B program arises under the laws of the United States.

        c.     This Court has jurisdiction over federal claims herein pursuant to 28 U.S.C. § 1337 relating to acts of Congress regulating commerce.

        d.     This Court has jurisdiction over federal civil rights claims under 42 U.S.C. § 1981 pursuant to 29 U.S.C. § 1343.

        e.     This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to the FLSA, which provides that "[a]n action to recover ... may be maintained ... in any Federal or State court of competent jurisdiction," 29 U. S. C. § 216(b).

        f.     This Court has supplemental jurisdiction over Plaintiffs' state law and common law claims under 28 U.S.C. § 1367 because those claims arise out of the same operative facts as the claims arising under federal law and are so related to those claims that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

7.    Defendants are actively conducting business in the Commonwealth of Pennsylvania and are therefore subject to this Court's personal jurisdiction.

8.    Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as Defendants' actions and/or omissions took place in Allegheny County, Pennsylvania and Washington County, Pennsylvania, both of which are within the Western District of Pennsylvania.

## PARTIES

### Plaintiffs

9.    Plaintiff Jose Guillermo Lom Laureano ("Mr. Guillermo Lom") resides in Rio Verde, San Luis Potosí, Mexico.  From April 2015 to November 2018, Mr. Guillermo Lom worked

for Defendants on an annual seasonal basis as a landscape laborer. Pursuant to 29 U.S.C. § 216(b), Mr. Guillermo Lom has consented to be a Plaintiff in this action.  *See* Exhibit A.

10.     Plaintiff Victor Felipe Sanchez Moreno ("Mr. Sanchez") resides in Rio Verde, San Luis Potosí, Mexico.  From April 2015 to November 2018, Mr. Sanchez worked for Defendants on an annual seasonal basis as a landscape laborer. Pursuant to 29 U.S.C. § 216(b), Mr. Sanchez has consented to be a Plaintiff in this action.  *See* Exhibit B.

11.     Plaintiff Omar Alejandro Rangel Montoya ("Mr. Rangel") resides in San Luis Potosí, Mexico.  From April 2016 to November 2018, Mr. Rangel worked for Defendants on an annual seasonal basis as a tree trimmer. Pursuant to 29 U.S.C. § 216(b), Mr. Rangel has consented to be a Plaintiff in this action.  *See* Exhibit C.

12.     Plaintiff Jose Emmanuel Lom Laureano ("Mr. Emmanuel Lom") resides in Rio Verde, San Luis Potosí, Mexico.  From April 2016 to July 2018, Mr. Emmanuel Lom worked for Defendants on an annual seasonal basis as a landscape laborer. Pursuant to 29 U.S.C. § 216(b), Mr. Emmanuel Lom has consented to be a Plaintiff in this action.  *See* Exhibit D.

13.     Plaintiff Jose Frank Lom Laureano ("Mr. Frank Lom") resides in Rio Verde, San Luis Potosi, Mexico.  From April 2018 to November 2018, Mr. Frank Lom worked for Defendants as a landscape laborer. Pursuant to 29 U.S.C. § 216(b), Mr. Frank Lom has consented to be a Plaintiff in this action.  *See* Exhibit E.

**Defendants**

14.     Defendant 20/20 Landscaping is a Pennsylvania limited liability corporation that maintains its operational headquarters in 75 Noble Avenue, Crafton, PA 15205, Allegheny County, Pennsylvania.  Defendant 20/20 Landscaping reports its official registered mailing address as 156 Chartiers Ave., Crafton, PA 15205.

4

15.     Defendant 20/20 Landscaping provides landscaping, snow and tree removal, retaining wall, mulch and firewood services to residential and commercial clients in and around Pittsburgh and Allegheny County. *See About Us,* 2020LANDTREE.COM, https://www.2020landtree.com/about-us/ (last visited 4/22/2019).

16.     Defendant Cress is the owner and President of 20/20 Landscaping and resides in Pennsylvania. Defendant Cress has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employee records of 20/20 Landscaping.

17.     Defendant Cress is an employer pursuant to 29 U.S.C. § 203(d), 43 P.S. § 260.2a, 43 P.S. § 333.103(g), and regulations promulgated thereunder and is jointly and severally liable with 20/20 Landscaping.

## FACTS

### The H-2B Program

18.     The H-2B Temporary Non-Agricultural Worker visa program ("H-2B Program" or "H-2B Visa Program") is a non-immigrant temporary worker visa program available to U.S. employers seeking to hire non-immigrant foreign workers to come to the United States and perform temporary or seasonal work if qualified U.S. workers capable of providing those services or labor are not available.

19.     Visas issued under the H-2B program are issued to the prospective workers with the employer as the "sponsor" of that worker and limit employment of the H-2B worker to the employer who petitions for their visas.

20.     An employer wishing to hire workers through the H-2B program must coordinate with several different government agencies, the foreign workers, and a foreign U.S. consulate.

21.    In general, the steps that an employer or its agent is required to follow to obtain

H-2B workers are as follows:

a.    Apply for and obtain a minimum "prevailing wage determination" from

the U.S. Department of Labor (DOL) based on information that the employer or

employer's agent provides regarding factors like the geographic area of the work,

education and skill level required, and tasks to be performed.

b.    Advertise the availability of the position to U.S. workers in the area of

employment.

c.    Apply for a "temporary labor certification" from the DOL using the DOL

Employment and Training Administration (ETA) Form ETA-9142B, which will require

assurances signed by the employer under penalty of perjury as to the minimum terms and

conditions on which employment will be offered by the employer on DOL Form ETA-

9142B Appendix B, and receive that certification.

d.    File the temporary labor certification and certain information about the

employer and prospective workers with the Department of Homeland Security (DHS)

United States Citizenship and Immigration Service (USCIS).

e.    Designate the country (or countries) where the employer will obtain the

foreign workers.

f.    Identify individual foreign workers selected by the employer or its

designated agent whom the employer seeks to employ as temporary H-2B workers.

g.    Make arrangements for processing of selected workers through the United

States Department of State consular offices in that country, which will include interviews

at scheduled appointment times for each of the workers.

6

22.     Unless an employer makes arrangements to directly pay visa processing costs and fees, H-2B workers must pay out-of-pocket the costs associated with traveling to and from the consular office, hotel rooms when awaiting morning appointments, the cost for the visa itself, and costs associated with travel to the job location in the United States.

23.     On Form ETA-9142B Appendix B, the employer certifies under penalty of perjury that, among other things, the offered wage equals or exceeds the highest of the most recent prevailing wage or the applicable Federal, State or local minimum wage; that the employer will pay the offered wage; and that the employer will comply with applicable Federal, State and local employment-related laws and regulations.

**Contract Formation Between 20/20 Landscaping and Plaintiffs**

24.     Defendant 20/20 Landscaping is a nursery and landscaping company based in Crafton, PA.

25.     Upon information and belief, 20/20 Landscaping: (1) designs and installs landscape plans for residential and commercial customers; (2) provides tree removal services; (3) installs retaining walls; (4) provides lawn and landscaping maintenance services; (5) supplies biological waste and tree cuttings for the production of compost and mulch; and (6) produces and supplies firewood.

26.     Upon information and belief, 20/20 Landscaping has participated in the federal H-2B program to import foreign temporary workers on a seasonal basis in each year since at least 2015.

27.     In order to participate in the H-2B visa program, an employer is required each year to obtain a "prevailing wage determination" from DOL establishing the minimum wage rate that the employer is permitted to offer to H-2B workers and to corresponding U.S. workers for

seasonal employment by the employer in the type of work described by the employer in its application for a prevailing wage determination by DOL.

28.     The job duties that will be performed by a worker determine the prevailing wage applicable to that position.  DOL classifies each position under a Standard Occupational Classification Code ("SOC Code") and determines the prevailing wage rate for that occupation in the geographic area of employment.  An employer is required to accurately and completely state the job duties that will be performed.  The employer is responsible for paying the prevailing wage rate in the area of employment for the job duties to which an H-2B worker is assigned.

29.     Each year after obtaining a prevailing wage determination for SOC Code 37-3011 "Landscaping and Groundskeeping Workers" from DOL, 20/20 Landscaping has been required to post information about the terms of its job offer through the Pennsylvania Department of Labor and Industry (PALI) PA Career Link and in a local newspaper of general circulation for circulation to U.S. workers interested in employment.

30.     Each year, 20/20 Landscaping has been required to submit an application for H-2B labor certification on a Form ETA-9142B.

31.     In each of the years 2015, 2016, 2017, and 2018 the H-2B labor certifications issued on behalf of 20/20 Landscaping listed the job title as "Landscape Laborer" and the job duties to be performed by the H-2B workers as those of landscape laborers.

32.     In each year relevant to this proceeding, DOL required that the contracts of employment for both H-2B workers and U.S. workers applying for seasonal positions with Defendants include promises to pay no less than the *minimum* prevailing wage established by DOL in accordance with the terms of H-2B labor certifications.

8

33.     In each year relevant to this proceeding, DOL required that the contracts of employment for both H-2B workers and corresponding U.S. seasonal workers applying for seasonal positions with Defendants included promises to pay overtime wages for overtime hours worked.

34.     The DOL Form ETA-9142Bs for Defendants in each of the years relevant to this matter required the employer to explicitly state the "Basic Rate of Pay Offered" and the "Overtime Rate of Pay" which would be offered to workers.

35.     In all relevant years, the DOL's certification requirements and regulations for the H-2B program at 20 C.F.R. Part 655, Subpart A established the minimum contractual terms which were required to be offered by employers to each H-2B worker. Those minimum terms of employment were required by DOL to be incorporated into Plaintiffs' contracts of employment each year they were employed by Defendants.

**Terms of 20/20 Landscaping's 2015 H-2B Labor Certifications**

36.     On January 13, 2015, DOL approved an ETA-9142B application for H-2B temporary labor certification to DOL for four (4) H-2B landscaping workers in 2015 at an hourly rate of $12.40 per hour and an overtime rate of $18.60 per hour for a period of employment from April 1, 2015 to October 31, 2015.

37.     The 2015 Form ETA-9142B submitted to DOL for Defendant 20/20 Landscaping had an annexed Appendix B that was executed under penalty of perjury on behalf of Defendant 20/20 Landscaping by Defendant Cress.  A copy thereof is annexed hereto and incorporated herein as Exhibit F.   The 2015 Appendix B included the following employer assurances as to the contractual terms of employment:

> 5.     The offered wage equals or exceeds the highest of the most recent prevailing wage that is or will be issued by the Department to the

9

employer for the time period the work is performed, or the applicable Federal, State, or local minimum wages, and the employer will pay the offered wage.

7.    During the period of employment that is the subject of this application, the employer will comply with applicable Federal, State and local employment-related law and regulations[...]

38.    In 2015, an annexed Statement of Temporary Need signed by Defendant Cress was incorporated into the ETA-9142B which stated, therein:

We will make all deductions from paychecks that are required by law. […] All deductions from workers' pay will be FLSA-compliant. […] Foreign workers rent their accommodations at fair market value during the proposed period of employment.

39.    In 2015, Mr. Guillermo Lom and Mr. Sanchez accepted the offer of employment and worked for Defendants from April through October 2015.

40.    Plaintiffs accepted each offer of employment verbally and by traveling to a U.S. consular office in Monterrey, Mexico to interview for an H-2B visa sponsored by Defendant 20/20 Landscaping, acquiring an H-2B visa limiting them to employment with 20/20 Landscaping, and by then traveling to Pennsylvania.

**Terms of 20/20 Landscaping's 2016 H-2B Labor Certifications**

41.    On January 2, 2016, Defendants placed a Job Posting on the Pennsylvania Department of Labor and Industry (PALI) PA Career Link for six (6) landscape laborers. The job posting included the following details, among others:

Must work Saturday and Sunday, when necessary.

The standard work day is from 7:30 AM until 4:30 PM, Monday through Friday. Employer will offer 40 hours per week. The worker may be requested to work more than the stated hours per day, depending on weather and other conditions.

The employer will make all deductions from worker's paycheck required by law. […] Potential elective deductions to be pre-authorized in writing if applicable are as follows: The employer will deduct for the reasonable fair

market value cost of rent and/or utilities based on number of occupants for those employees who elect to live in employer offered housing.

42.     On March 10, 2016, DOL approved an ETA-9142B application for H-2B temporary labor certification to DOL for six (6) H-2B landscaping workers for 2016 at an hourly rate of $12.49 per hour and an overtime rate of $18.74 per hour for a period of employment from April 1, 2016 to December 2, 2016.

43.     The Form ETA-9142B for 2016 had an annexed Appendix B that was executed under penalty of perjury on behalf of Defendant 20/20 Landscaping by Defendant Cress.  A copy thereof is annexed hereto and incorporated herein as Exhibit G.   The 2016 Appendix B included the following employer assurance as to the contractual terms of employment:

> 5.     The offered wage equals or exceeds the highest of the most recent prevailing wage that is or will be issue by the Department to the employer for the time period the work is performed, or the applicable Federal, State, or local minimum wage, and the employer will pay at least the offered wage … during the entire period of this application.

> 7.     During the period of employment that is the subject of this application, the employer will comply with applicable Federal, State and local employment-related law and regulations including, but not limited to, employment-related health and safety laws.

> 11.     The employer will not place any H-2B workers employed pursuant to this application outside the area of intended employment or in a job classification not listed on the approved application unless the employer has obtained a new approved Form ETA-9142B.

> 13.     The employer will make all deductions from workers' paychecks required by law and only those additional authorized and reasonable deductions disclosed in the job order. Deductions not disclosed will be prohibited.

> 17.     The employer will keep a record of workers' earnings and provide the workers with the required earnings statement on or before each payday[…]

> 22.     The employer has not and will not (and has not and will not cause another person to) intimidate, threaten, restrain, coerce, blacklist,

11

> discharge or in any other matter discriminate against and person
> who […] has filed a complaint; instituted or caused to be instituted
> any proceeding; testified or is about to testify; consulted with a
> worker's center, community organization, labor union, legal
> assistance program or attorney; or exercised or asserted on behalf
> of himself/herself or others any right or protection.

44.   In 2016, Mr. Guillermo Lom, Mr. Sanchez, Mr. Rangel and Mr. Emmanuel Lom

accepted the offer of employment and worked for Defendants from April through December

2016.

45.   Plaintiffs accepted each offer of employment verbally and by traveling to a U.S.

consular office in Monterrey, Mexico to interview for an H-2B visa with Defendant 20/20

Landscaping, acquiring an H-2B visa limiting them to employment with 20/20 Landscaping, and

by then traveling to Pennsylvania.

**Terms of 20/20 Landscaping 2017 H-2B Labor Certifications**

46.   On February 9, 2017, DOL approved an ETA-9142B application for H-2B

temporary labor certification to DOL for six (6) H-2B landscaping workers for FY2017 at an

hourly rate of $13.02 per hour and an overtime rate $19.53 for a period of employment from

April 1, 2017 to November 30, 2017.

47.   An annexed Statement of Temporary Need signed by Defendant Cress was

incorporated into the 2017 ETA-9142B  which included the following statement:

> Duties requested workers would be performing are consistent with those
> described on the USDOL ETA Form 9141 Prevailing Wage Determination
> SOC 37-3011 for Landscaping and Groundskeeping Workers[.]

48.   The Form ETA-9142B for 2017 had an annexed Appendix B that was executed

under penalty of perjury on behalf of Defendant 20/20 Landscaping by Defendant Cress.  A copy

thereof is annexed hereto and incorporated herein as Exhibit H.  That Appendix B containing the

following employer assurances as to the contractual terms of employment to be offered to

Defendants' H-2B landscaping laborers:

> 5.   The offered wage equals or exceeds the highest of the most recent prevailing wage that is or will be issue by the Department to the employer for the time period the work is performed, or the applicable Federal, State, or local minimum wage, and the employer will pay at least the offered wage … during the entire period of this application.

> 7.   During the period of employment that is the subject of this application, the employer will comply with applicable Federal, State and local employment-related law and regulations[….]

> 11.  The employer will not place any H-2B workers employed pursuant to this application outside the area of intended employment or in a job classification not listed on the approved application unless the employer has obtained a new approved Form ETA-9142B.

> 13.  The employer will make all deductions from workers' paychecks required by law and only those additional authorized and reasonable deductions disclosed in the job order. Deductions not disclosed will be prohibited.

> 16.  The employer will keep a record of workers' earnings and provide the workers with the required earnings statement on or before each payday[…]

> 21.  The employer has not and will not (and has not and will not cause another person to) intimidate, threaten, restrain, coerce, blacklist, discharge or in any other matter discriminate against and person who […] has filed a complaint; instituted or caused to be instituted any proceeding; testified or is about to testify; consulted with a worker's center, community organization, labor union, legal assistance program or attorney; or exercised or asserted on behalf of himself/herself or others any right or protection.

49.   In 2017, Plaintiffs Mr. Guillermo Lom, Mr. Sanchez, Mr. Moreno, Mr. Rangel and Mr. Emmanuel Lom accepted the offer of employment and worked for Defendants from April through November 2017. Mr. Emmanuel Lom ended his employment early due to illness.

50.   Plaintiffs accepted each offer of employment verbally and by traveling to a U.S. consular office in Monterrey, Mexico to interview for an H-2B visa sponsored by Defendant

20/20 Landscaping, acquiring an H-2B visa limiting them to employment with 20/20

Landscaping, and by then traveling to Pennsylvania.

**Terms of 20/20 Landscaping's 2018 H-2B Labor Certifications**

51.     On February 22, 2018, DOL approved an ETA-9142B application for H-2B

temporary labor certification to DOL for eight (8) H-2B landscaping workers for 2018 at an

hourly rate of $13.59 per hour and an overtime rate of $20.39 per hour for a period of

employment from April 1, 2018 to November 30, 2018.

52.     The Form ETA-9142B for 2018 had an annexed Appendix B that was executed

under penalty of perjury on behalf of Defendant 20/20 Landscaping by Defendant Cress.  A copy

thereof is annexed hereto and incorporated herein as Exhibit I.  That Appendix B contained the

following employer assurances as to the contractual terms of employment to be offered to

Defendants' H-2B landscaping laborers:

> 5.      The offered wage equals or exceeds the highest of the most recent
> prevailing wage that is or will be issue by the Department to the
> employer for the time period the work is performed, or the
> applicable Federal, State, or local minimum wage, and the
> employer will pay at least the offered wage … during the entire
> period of this application.

> 7.      During the period of employment that is the subject of this
> application, the employer will comply with applicable Federal,
> State and local employment-related law and regulations[….]

> 11.     The employer will not place any H-2B workers employed pursuant
> to this application outside the area of intended employment or in a
> job classification not listed on the approved application unless the
> employer has obtained a new approved Form ETA-9142B.

> 13.     The employer will make all deductions from workers' paychecks
> required by law and only those additional authorized and
> reasonable deductions disclosed in the job  order. Deductions not
> disclosed will be prohibited.

16.    The employer will keep a record of workers' earnings and provide the workers with the required earnings statement on or before each payday[…]

21.    The employer has not and will not (and has not and will not cause another person to) intimidate, threaten, restrain, coerce, blacklist, discharge or in any other matter discriminate against any person who […] has filed a complaint; instituted or caused to be instituted any proceeding; testified or is about to testify; consulted with a worker's center, community organization, labor union, legal assistance program or attorney; or exercised or asserted on behalf of himself/herself or others any right or protection.

53.    In 2018, an annexed H-2B Detailed Statement of Temporary Need signed by Defendant Cress was incorporated into the ETA-9142B which included the following statement:

Work duties will be consistent with those stated on the USDOL ETA Form 9142B Application for Temporary Employment Certification and the USCIS I-129 Petition for Nonimmigrant Worker. These duties are evidenced in our various contracts/agreements for the coming season covering the period of proposed employment. These duties provide the basis for the prevailing wage the requested workers will be paid.

54.    In 2018, all Plaintiffs accepted the offer of employment and began work for Defendants in April 2018. Mr. Emmanuel Lom ended his employment in July 2018 due to illness. The other Plaintiffs worked for Defendants through November 2018.

55.    Plaintiffs accepted each offer of employment verbally and by traveling to a U.S. consular office in Monterrey, Mexico to interview for an H-2B visa sponsored by Defendant 20/20 Landscaping, acquiring an H-2B visa limiting them to employment with 20/20 Landscaping, and by then traveling to Pennsylvania.

**2015 DOL Requirements for Repayment of Pre-Employment Expenses**

56.    On August 21, 2009, DOL through its Wage and Hour Division issued "Field Assistance Bulletin No. 2009-2," covering "Travel and Visa Expenses of H-2B Workers Under the FLSA." That document controlled the terms of employment of H-2B workers. U.S. Dep't of

Labor Field Assistance Bulletin No. 2009-2 (Aug.  21, 2009), *available at*

https://www.dol.gov/whd/FieldBulletins/FieldAssistanceBulletin2009_2.htm.

57.     That field assistance bulletin required H-2B employers to treat costs of pre-

employment transportation and other expenses such as consular visa fees as the responsibility of

the employer to the extent that they reduced wages below required wage levels.

58.     Prior to Defendants submitting applications to DOL to participate in the H-2B

program, Defendants had retained the services of MAS Labor H-2B, LLC as their agent for the

H-2B program.  At all times Defendants had access to advice and assistance from MAS Labor H-

2B, LLC, as to compliance with the requirements of the H-2B program

59.     At all times beginning in the fall of 2014 and thereafter, Defendants knew or

should have known of the DOL requirements for payment of travel and visa expenses for H-2B

workers.

60.     DOL by interpretative regulation holds that in any week in which overtime is

worked, the FLSA protects the required or promised hourly wage (such as the H-2B minimum

prevailing wage) for all hours worked. *See* 29 C.F.R. §778.5. That section provides:

**29 CFR §778.5 Relation to other laws generally.**

Various Federal, State, and local laws require the payment of minimum
hourly, daily or weekly wages different from the minimum set forth in the Fair
Labor Standards Act, and the payment of overtime compensation computed on
bases different from those set forth in the Fair Labor Standards Act. Where such
legislation is applicable and does not contravene the requirements of the Fair
Labor Standards Act, nothing in the act, the regulations or the interpretations
announced by the Administrator should be taken to override or nullify the
provisions of these laws. Compliance with other applicable legislation does not
excuse noncompliance with the Fair Labor Standards Act. *Where a higher
minimum wage than that set in the Fair Labor Standards Act is applicable to an
employee by virtue of such other legislation, the regular rate of the employee, as
the term is used in the Fair Labor Standards Act, cannot be lower than such
applicable minimum*, for the words "regular rate at which he is employed" as used

in section 7 must be construed to mean the regular rate at which he is lawfully employed.

[Emphasis added.]

61.     DOL's Field Operations Handbook at Chapter 30 thereof, entitled "Records, Minimum Wage, and Payment of Wages," has provided since at least 2000 in § 30c16 entitled "Deductions in non-overtime weeks" that in non-overtime weeks, deductions that would be impermissible under the FLSA also cannot reduce the amount of wages payable in a week below the higher minimum wage set by "such other legislation," unless authorized under the law governing that other program. U.S. Dep't of Labor Wage and Hour Division Field Operations Handbook, *Chapter 30: Records, Minimum Wage, and Payment of Wages* (Nov. 17, 2016), *available at* https://www.dol.gov/whd/FOH/FOH_Ch30.pdf.

62.     In rulemaking proceedings in 2011 and 2012, DOL reaffirmed its historical position that under the H-2B program, employers are not permitted to reduce wages below the prevailing wage rates for expenses for the benefit of the employer that would be impermissible under the FLSA. *See*, 76 Fed. Reg. 15,130 (March 18, 2011) and 77 Fed. Reg. 10,038 (Feb. 21, 2012) discussion of requirements of 20 C.F.R. § 655.20.

63.     Effective April 29, 2015 the DOL and the Department of Homeland Security (DHS) jointly promulgated regulations for the H-2B program, which were immediately effective. *See* 80 Fed. Reg. 24,108 (April 29, 2015).  Those regulations had specific requirements governing pre-employment expenses at 20 C.F.R. § 655.20(j).  Those regulations provided:

**20 C.F.R. § 655.20(j) Transportation and visa fees.**
    (1)
            (i) **Transportation to the place of employment**. The employer must provide or reimburse the worker for transportation and subsistence from the place from which the worker has come to work for the employer, whether in the U.S. or abroad, to the place of employment if the worker completes 50 percent of the period of employment covered by the job

order (not counting any extensions). The employer may arrange and pay for the transportation and subsistence directly, advance at a minimum the most economical and reasonable common carrier cost of the transportation and subsistence to the worker before the worker's departure, or pay the worker for the reasonable costs incurred by the worker. When it is the prevailing practice of non-H-2B employers in the occupation in the area to do so or when the employer extends such benefits to similarly situated H-2B workers, the employer must advance the required transportation and subsistence costs (or otherwise provide them) to workers in corresponding employment who are traveling to the employer's worksite. The amount of the transportation payment must be no less (and is not required to be more) than the most economical and reasonable common carrier transportation charges for the distances involved. The amount of the daily subsistence must be at least the amount permitted in § 655.173. Where the employer will reimburse the reasonable costs incurred by the worker, it must keep accurate and adequate records of: The costs of transportation and subsistence incurred by the worker; the amount reimbursed; and the date(s) of reimbursement. Note that the FLSA applies independently of the H-2B requirements and imposes obligations on employers regarding payment of wages.

*           *           *

(2) The employer must pay or reimburse the worker in the first workweek for all visa, visa processing, border crossing, and other related fees (including those mandated by the government) incurred by the H-2B worker, but not for passport expenses or other charges primarily for the benefit of the worker.

**Impermissible Deductions from 2015 Wages for Pre-Employment Expenses**

64.     In the year 2015, Mr. Guillermo Lom and Mr. Sanchez incurred unreimbursed pre-employment expenses for travel costs between their permanent residences in Rio Verde and the U.S. Embassy in Monterrey, where they were required to travel in order to obtain their H-2B visas.

65.     In 2015, arrangements made by Defendants for consular processing in Monterrey required Plaintiffs to incur unreimbursed expenses for several nights in a hotel in Monterrey as part of the processing for H-2B visas with Defendants.

66.     In 2015, Mr. Guillermo Lom and Mr. Sanchez incurred unreimbursed expenses for travel from Monterrey to Pennsylvania.

67.     Defendants did not at any time pay or reimburse to Plaintiffs or other H-2B workers the costs of subsistence during their 2015 travels.

68.     All of the above travel expenses were primarily for the benefit of the Defendants as the employer of H-2B workers.

69.     Upon information and belief, neither Mr. Guillermo Lom nor Mr. Sanchez signed any agreement permitting these deductions.

70.     These deductions were not permitted by the contractual agreements between the H-2B workers and Defendants.

71.     Deductions which reduced net wages below the minimum prevailing wages required for the H-2B program constituted impermissible deductions from wages.

72.     By no later than July 24, 2015, Plaintiffs Guillermo Lom and Sanchez had completed fifty percent of their offered employment contract through October 31, 2015.  The next pay date for wages was on Friday, July 31, 2015.

73.     Based on the requirements of 20 C.F.R. § 655.20(j) any pre-employment transportation expenses which had not been previously repaid to Plaintiffs Guillermo Lom and Sanchez were due by no later than July 31, 2015.  At no time were such unreimbursed pre-employment expenses paid to 2015 Plaintiffs Guillermo Lom and Sanchez.

74.     Upon information and belief, the Defendants' impermissible deductions from the wages which they were contractually obliged to pay to non-white Mexican H-2B workers was an intentional denial of the right of such non-white non-citizen workers to enforce their contractual rights.

**Prevailing Wage Violations**

75.     In each of the years 2015 through 2018, the H-2B labor certifications issued to Defendants under which Plaintiffs were employed described the job duties they would perform as those of a landscape laborer.

76.     In each of the years 2015 through 2019, not all H-2B workers were assigned duties of a landscape laborer by Defendants 20/20 Landscaping and Defendant Cress.

77.     In 2015, Mr. Guillermo Lom and at least one other H-2B worker were primarily assigned to work involving trimming and removing trees. They received special training for these duties.

78.     In 2016, 2017, and 2018 Mr. Rangel and at least one other H-2B worker were primarily assigned to work involving trimming and removing trees. They received special training for these duties.

79.     Had Defendants accurately described the job duties of Mr. Guillermo Lom and Mr. Rangel to DOL and PALI, Defendants would have been required to pay those employees a higher hourly prevailing wage rate than that assigned for landscape laborers and a higher wage rate that the one Mr. Guillermo Lom and Mr. Rangel were actually paid.

80.     Upon information and belief, had Defendants properly described the job duties of workers involved in the trimming and removal of trees, DOL would have assigned the SOC Code 37-3013 for Tree Trimmers and Pruners to the prevailing wage determinations for those positions.

a.     In 2015 the H-2B prevailing wage rate for the Pittsburgh, PA Metropolitan Statistical Area for SOC Code 37-3013 was $19.39 per hour and the required overtime rate for that position was $29.90.  Plaintiffs assigned to this work were underpaid $7.53 per hour for non-overtime work and $11.30 per hour for overtime work.

b.      In 2016 the H-2B prevailing wage rate for the Pittsburgh, PA Metropolitan Statistical Area for SOC Code 37-3013 was $20.14 per hour and the required overtime rate for that position was $30.21.  Plaintiffs assigned to this work were underpaid $7.65 per hour for non-overtime work and $11.47 per hour for overtime work.

c.      In 2017 the H-2B prevailing wage rate for the Pittsburgh, PA Metropolitan Statistical Area for SOC Code 37-3013 was $21.09  per hour and the required overtime rate for that position was $31.64.  Plaintiffs assigned to this work were underpaid $8.07 per hour for non-overtime work and $12.11 per hour for overtime work.

d.      In 2018 the H-2B prevailing wage rate for the Pittsburgh, PA Metropolitan Statistical Area for SOC Code 37-3013 was $15.62 per hour and the required overtime rate for that position was $23.43.  Plaintiffs assigned to this work were underpaid $2.03 per hour for non-overtime work and $3.04 per hour for overtime work.

81.      Upon information and belief, non-Mexican employees of 20/20 Landscaping who were engaged in tree trimming and removal were paid a significantly higher wage than H-2B workers engaged in the same work.

82.      Upon information and belief, the Defendants' failure to accurately describe the job duties of non-white Mexican H-2B workers and pay a higher hourly prevailing wage as required by contract was an intentional denial of the right of such non-white non-citizen workers to enforce their contractual rights.

83.      The failure to pay the prevailing wage rate for the job duties to which Plaintiffs doing this work were assigned violated the terms that DOL required to be offered to Plaintiffs in their employment contracts.

**Overtime Wage Violations**

84.      The primary responsibilities for Plaintiffs engaged in the activities of landscape

laborers were installing landscape plans for residential and commercial customers, installing retaining walls and providing lawn and landscaping maintenance services.

85.     The primary responsibilities for Plaintiffs engaged in the activities of tree trimmers were trimming and removing trees.

86.     Plaintiffs are not exempt under the FLSA or the PA MWA.

87.     Plaintiffs did not have the power to hire and fire any worker.

88.     Plaintiffs worked under the direct supervision of Defendant Cress.

89.     Plaintiffs reported to Defendant Cress for all work conducted for 20/20 Landscaping.

90.     Plaintiffs routinely worked between approximately eight (8) and twelve (12) hours per day, Monday through Friday.

91.     Plaintiffs utilized a punch card system Monday through Friday. On those days, Plaintiffs punched their timecards in the morning, and received instructions and locations for their work assignment that day before departing for the day's worksite in Defendants' vehicles.

92.     Plaintiffs punched out after returning from their worksite in the afternoons on Monday through Friday.

93.     Plaintiffs performed additional work for Defendants on Saturdays and Sundays. The work was substantially similar to the work performed Monday through Friday. The hours of additional work ranged from approximately eight (8) to approximately eighteen (18) hours per weekend, with the exception of occasional weekends in which the weather did not allow Plaintiffs to work.

94.     Plaintiffs received their assignments for weekend work from Defendant Cress.

95.     Plaintiffs were not permitted to punch in on Saturdays and Sundays. Upon

information and belief there was no formal record kept of hours that Plaintiffs worked on Saturdays and Sundays.

96.     For weeks in which Plaintiffs worked more than forty (40) hours in the period of Monday through Friday, they were paid overtime premium compensation for hours in excess of 40.

97.     Plaintiffs were paid straight time for all hours worked on Saturdays and Sundays. Plaintiffs never received overtime premium compensation for hours worked on Saturdays and Sundays.

**Housing Violations**

**Housing for the 2016 Season**

98.     In April 2016 upon their arrival to Pennsylvania for the 2016 season, Plaintiffs Guillermo Lom, Sanchez, Rangel, and Emmanuel Lom were placed by Defendants in a trailer located at or near 84 Wilson Avenue, Cecil, Pennsylvania 15321 ("the trailer"). Two additional similarly situated H-2B employees of Defendants were also placed in this trailer.

99.     H-2B workers including the above named Plaintiffs were housed in the trailer from on or about April 21, 2016 until on or about December 2, 2016.

100.     Upon information and belief, the trailer was obtained, controlled and provided by Defendant Cress for purposes of housing Plaintiffs and other H-2B workers for the duration of their 2016 contract.

101.     Plaintiffs and other H-2B workers had no direct means of communication with any owner of the property and at all times dealt only with Defendant Cress in relationship to the housing.

102.     Defendant Cress charged each Plaintiff $150.00 every two weeks as a rental charge for the property. In total, Defendant Cress received approximately $1,935 per month in rent for the 2016 trailer.

103.     The trailer was located in Cecil Township, Washington County, Pennsylvania, which requires property owners to comply with the International Property Maintenance Code, 2012 Edition and specifically requires that adequate mandated heating equipment is operational at all times during the period of October 1 through May 31 of each year.

104.     The International Property Maintenance Code, 2012 Edition at Section 404 thereof sets minimum occupancy standards for housing.

105.     Between April and November 2016, there was no functional heating system in the trailer. Plaintiffs frequently wore many layers of clothing and their shoes to bed in an attempt to stay warm at night.

106.     For approximately one week in April 2016 Plaintiffs did not have hot water in the trailer.

107.     Plaintiffs and similarly situated H-2B workers had insufficient space in the two-bedroom trailer. For example, they were unable to fully open the doors to the bedrooms due to the space occupied by their beds.

108.     The housing rented to Plaintiffs in 2016 did not comply with local housing standards and requirements.

109.     Housing provided by an H-2B employer to temporary seasonal employees is required to comply with safety and health standards under the Occupational Safety and Health Act at 29 C.F.R. § 1910.142.

110.    The housing provided by Defendants in the trailer to Plaintiffs failed to comply with applicable OSHA standards.

111.    DOL has long barred any deduction from wages protected under the Fair Labor Standard Act for charges for housing, which is not offered in compliance with law.  *See* U.S. Dep't of Labor Field Assistance Bulletin No. 2015-1 (Dec. 17, 2015), *available at* https://www.dol.gov/whd/fieldbulletins/fab2015_1.htm.  No employer may profit from such housing or charge more than the reasonable cost for such housing. *Id.*

112.    The DOL regulations for the H-2B program explicitly provide these protections for deductions from the required minimum prevailing wage in H-2B employment.  *See* 20 C.F.R. § 655.20(c).

113.    Deductions from the wages of Plaintiffs for housing in 2016 were impermissible deductions from their H-2B wages.

**Housing for the 2017-2018  Seasons**

114.    Upon their arrival to Pennsylvania for the 2017 and 2018 seasons, Plaintiffs were placed by Defendants in worker housing at 79 Noble Street, Crafton, PA 15205. Three additional H-2B workers also occupied this housing.

115.    Upon information and belief, the housing at 79 Noble Street was owned, controlled and provided by Defendant Cress. According to the Allegheny County Real Estate Database, the property is owned by Cress Properties, LLC.

116.    The Allegheny County Health Department has promulgated minimum standards required for habitable housing.

117.    The housing at 79 Noble Street adjoins the main office space for 20/20 Landscaping. A door separates the office space from the worker housing.

118.    Defendants frequently entered 79 Noble Street without notice to Plaintiffs or other similarly situated H-2B employees.

119.    On several occasions, Plaintiffs notified Defendant Cress about problems with 79 Noble Street, including but not limited to problems with the functionality of its cooling system. These problems were not immediately resolved.

120.    Defendant Cress charged each Plaintiff and each other H-2B occupant $50.00 weekly as a rental charge for the property. In total, Defendant Cress received approximately $1,720 per month in rent for the worker housing.

121.    Upon information and belief, the charges by Defendants for housing in 2017 and 2018 exceeded the reasonable cost for such housing as allowed by regulations of the U.S. Department of Labor.

**Retaliation**

122.    On Friday, July 6, 2018, Plaintiffs had finished their day's work period and clocked out. Defendant Cress instructed them to wash a truck on the property. Plaintiffs expressed to Defendant Cress their need to visit their bank before it closed. Defendant Cress became upset and threatened to withhold the workers' paychecks until they washed the vehicle.

123.    After conferring with his fellow H-2B workers Mr. Guillermo Lom met with Defendant Cress and voiced that several of Defendants' employment practices were unfair, including that the H-2B workers were made to work hours on Saturday and Sunday for which they were paid in cash and not paid overtime.

124.    Following this dispute, Mr. Guillermo Lom and his fellow H-2B workers were not asked to work on Saturday and Sunday, July 7 and 8, 2018 while at least two U.S. citizen workers were given work.

125.     When the H-2B workers came to punch in on Monday, July 9, Defendant Cress informed Mr. Guillermo Lom that he had purchased a plane ticket for Mr. Guillermo Lom to return to Mexico the following day, prior to his completion of the H-2B contract. Mr. Guillermo Lom wished to continue working.

126.     Defendant Cress informed Plaintiffs that he had contacted MAS Labor and the U.S. consulate in Monterrey, Mexico.

127.     Plaintiffs did not work for Defendants on Monday, July 9, 2018.

128.     Mr. Guillermo Lom contacted Justice at Work, which is a non-profit legal services organization, regarding the employment dispute. Justice at Work communicated with Defendants and their agent and filed a National Labor Relations Board (NLRB) Charge of Unfair Labor Practices on behalf of Plaintiffs. The workers were reinstated on Tuesday, July 10, 2018.

129.     From July 9, 2018 until the end of the H-2B contract in November 2018 Defendants no longer regularly assigned Plaintiffs work on Saturdays or Sundays.

130.     From July 9, 2018 until the end of the H-2B contract in November 2018 Defendants assigned fewer hours to Plaintiffs during the regular workweek.

131.     Plaintiffs returned to their homes in Mexico immediately after the end of their H-2B contracts on November 30, 2018.

132.     On the way to the Pittsburgh airport in November 2018, Mr. Guillermo Lom asked Defendant Cress if the H-2B workers would be returning in the 2019 season. Defendant Cress did not respond.

133.     In early 2019, Plaintiffs awaited communication from Defendants about H-2B employment in the 2019 season.

134.    On March 13, 2019, Mr. Guillermo Lom contacted Defendant Cress via the messaging service WhatsApp asking if he had work with 20/20 Landscaping for 2019. He received no response from Defendant Cress.

135.    On March 14, 2019, Mr. Rangel contacted Defendant Cress about work with 20/20 Landscaping in 2019 via telephone. Defendant Cress told him he was not needed.

136.    Upon information and belief, since the end of the 2018 H-2B season Defendant Cress has falsely told other potential H-2B employers and/or their agent for H-2B processing that Plaintiffs are bad workers.

137.    Upon information and belief, Defendants received approved labor certifications for ten (10) H-2B workers in 2019.

138.    Upon information and belief, Defendants did not hire Plaintiffs and instead hired other Mexican nationals for its 2019 season.

139.    Defendants' actions as described above were in retaliation for Plaintiffs' assertions of their rights under federal and state employment laws.

140.    As set forth above, the DOL ETA-9142B, Appendix B included the following specific assurance by Defendants:

> 21.    The employer has not and will not (and has not and will not cause another person to) intimidate, threaten, restrain, coerce, blacklist, discharge or in any other matter discriminate against any person who […] has filed a complaint; instituted or caused to be instituted any proceeding; testified or is about to testify; consulted with a worker's center, community organization, labor union, legal assistance program or attorney; or exercised or asserted on behalf of himself/herself or others any right or protection.

141.    DOL regulations for the H-2B program similarly provide at 20 C.F.R. § 655.20 (n) as follows:

20 C.F.R. § 655.20 Assurances and obligations of H-2B employers.

*          *          *

(n) No unfair treatment. The employer has not and will not intimidate, threaten, restrain, coerce, blacklist, discharge or in any manner discriminate against, and has not and will not cause any person to intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against, any person who has:

> (1) Filed a complaint under or related to 8 U.S.C. 1184(c), section 214(c) of the INA, 29 CFR part 503, or this subpart, or any other regulation promulgated thereunder;

> (2) Instituted or caused to be instituted any proceeding under or related to 8 U.S.C. 1184(c), section 214(c) of the INA, 29 CFR part 503, or this subpart or any other regulation promulgated thereunder;

> (3) Testified or is about to testify in any proceeding under or related to 8 U.S.C. 1184(c), section 214(c) of the INA, 29 CFR part 503, or this subpart or any other regulation promulgated thereunder;

> (4) Consulted with a workers' center, community organization, labor union, legal assistance program, or an attorney on matters related to 8 U.S.C. 1184(c), section 214(c) of the INA, 29 CFR part 503, or this subpart or any other regulation promulgated thereunder; or

> (5) Exercised or asserted on behalf of himself/herself or others any right or protection afforded by 8 U.S.C. 1184(c), section 214(c) of the INA, 29 CFR part 503, or this subpart or any other regulation promulgated thereunder.

142.     Justice at Work is a legal assistance program and assistance and representation of Plaintiffs was provided by attorneys employed by Justice at Work.

143.     Upon information and belief, Defendants at all times were aware that Plaintiffs had sought assistance from attorneys at Justice at Work.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

144.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the group of employees defined as follows:

All current and former landscape laborers employed by Defendants as H-2B workers who performed work between April 15, 2016 and November 20, 2018 who timely consent to be plaintiffs under the FLSA.

145.     Plaintiffs desire to pursue their FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

146.     Plaintiffs and this group of employees are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendant 20/20 Landscaping's previously described common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, 20/20 Landscaping's common compensation, timekeeping, and payroll practices applicable to landscape laborers.

147.     Specifically, 20/20 Landscaping failed to pay overtime at time and a half (1 ½ times) the employee's regular rate as required by the FLSA for all hours worked in excess of forty (40) per workweek.

148.     Similarly, impermissible deductions from wages for unreasonable charges for housing are claims common to other H-2B workers.

149.     The similarly situated employees are known to 20/20 Landscaping, are readily identifiable, and may be located through 20/20 Landscaping's records and the records of any payroll companies that 20/20 Landscaping utilizes.

150.     The similarly situated employees may be readily notified of this action through mail, electronic and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## REPRESENTATIVE ACTION ALLEGATIONS UNDER THE WPCL

151.    Claims arising under the PA WPCL are brought pursuant to statutory authorization for the joinder of claims as specifically authorized under Section 9.1(b) of the WPCL, 43 P.S. § 260.9a(b) for the years 2016, 2017, and 2018 and define the represented group of employees as follows:

> All current and former landscape laborers employed by Defendants as H-2B workers who performed work between April 15, 2016 and November 20, 2018.

152.    The Pennsylvania statutory provision authorizing an employee to join claims of other similarly situated persons in a single representative action provides in relevant part:

> Actions by an employe [sic], labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such … party to whom any type of wages is payable or any one or more employes [sic] for and in behalf of himself or themselves and other employes [sic] similarly situated … Any such employe, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.

*See* Section 9.1(b) of the WPCL, 43 P.S. § 260.9a(b).

153.    Such statutorily authorized representative claims are not subject to the requirements for class action certification under Fed. R. Civ. P. 23(b)(3).

## COUNT I

### Violations of the FLSA

154.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

155.    As set forth above, Plaintiffs assert this claim on their own behalf and on behalf of other similarly situated workers as set forth above at ¶ 144.

156.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which the employee is employed.  *See* 29 U.S.C. § 207(a)(1).

157.    Pursuant to 29 U.S.C. § 203(m), the FLSA does not allow an employer to claim credit as wages paid for amounts deducted for housing and other expenses or facilities that do not constitute reasonable deductions from wages as set forth above at ¶ 111.

158.    20/20 Landscaping is subject to the wage requirements of the FLSA because 20/20 Landscaping is an "employer" under 29 U.S.C. § 203(d).

159.    Blair Curtis Cress, Jr.  is subject to the wage requirements of the FLSA because Defendant Cress is an "employer" under 29 U.S.C. § 203(d).

160.    At all relevant times, 20/20 Landscaping is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

161.    At all relevant times, Defendant Cress is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

162.    During all relevant times, Plaintiffs are covered employees entitled to the above-described FLSA protections.  *See* 29 U.S.C. § 203(e).

163.    Plaintiffs are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

164.    Defendants knowingly failed to compensate Plaintiffs at a rate of one and one-half (1 ½) times their regular hourly wage for all hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

165.    Upon information and belief, Defendants also failed to make, keep, and preserve records with respect to Plaintiffs sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

166.    Defendants unlawfully discriminated against Plaintiffs for complaining about Defendant's violation of the FLSA by reducing their weekend work, attempting to send Mr. Guillermo Lom home in 2018, and by failing to rehire all Plaintiffs for the 2019 season. 29 U.S.C. § 215(a)(3).

167.    In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

168.    Pursuant to 29 U.S.C. § 216(b), employers such as 20/20 Landscaping and Defendant Cress who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

169.    Pursuant to 29 U.S.C. § 216(b), employers such as 20/20 Landscaping and Defendant Cress who unlawfully discriminate against employees for complaining about violations of the FLSA shall be liable for legal or equitable relief including but not limited to employment, reinstatement, lost wages, and liquidated damages.

170.    Pursuant to the FLSA, Defendants are further liable for the payment of attorneys' fees to Plaintiffs' counsel for pursuit of these claims.

## COUNT II
### Violations of the Pennsylvania Wage Payment and Collection Law

171.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

172.    As set forth above at ¶ 151, Plaintiffs assert this claim on their own behalf and on behalf of all other similarly situated workers.

173.    The WPCL is a Pennsylvania statutorily established mechanism for employees to make claims for unpaid wages in accordance with the terms of contractual agreements between an employee and an employer.  In the specific case of H-2B workers, federal law and the regulations and requirements of the U.S. Department of Labor establish minimum terms and conditions that are required to be incorporated into each contract offered by an employer to H-2B workers.  Those terms and conditions are common to each of the H-2B workers employed by the employer in a specific year.

174.    The WPCL requires employers to notify employees of the rate of pay at the time of hiring, and to notify employees of a change in the pay rate prior to the time of the change. 43 P.S. § 260.4.

175.    The WPCL also requires that all wages earned by an employee be timely paid by the employer on a regularly-scheduled payday. 43 P.S. § 260.3(a).

176.    At all times relevant to this matter, Defendants established a bi-weekly pay period for seasonal H-2B workers which ended on a Sunday with the payment due on the following Friday.

177.    The failure to pay Plaintiff Rangel and other similarly situated H-2B workers the proper wage rate established by the U.S. Department of Labor for Tree Trimmers and Pruners, in each of the years 2016, 2017, and 2018 as set forth above at ¶¶ 75-80 constituted violations of the WPCL.

178.    Deductions for charges for housing and other facilities not offered in compliance with law and federal regulations for the H-2B program as set forth above at ¶¶ 98-114 are impermissible deductions from wages under the WPCL.

179.    The H-2B seasonal employment contracts for each of the years 2016, 2017 and 2018 included explicit provisions for the payment of overtime wage rates as set forth above.

180.    The failure to pay overtime wages for all hours worked by Plaintiffs and other similarly situated H-2B workers as required under the explicit terms of their employment contracts constituted a failure to timely pay all wages due to those workers.

181.    Throughout the employment of Plaintiffs and other similarly situated H-2B workers in 2016, 2017, and 2018, required wages remained unpaid for 30 days beyond the regularly scheduled payday.

182.    Upon information and belief, the shortage of wages exceeded 5% of the gross wages payable on two or more pay periods in a calendar quarter in the second, third and fourth calendar quarters of each of the years 2016, 2017, and 2018.

183.    Defendants had no good faith reason for withholding any wages owed to Plaintiffs.

184.    The WPCL at 43 PS. § 260.10 provides that

"[w]here wages remain unpaid for thirty days beyond the regularly scheduled payday, … or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right to set-off or counter-claim exists accounting for such non-payment, the employe[e] shall be entitled to claim, in addition [to the wages owed], as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater."

185.     As a consequence of the Defendants' violations of their rights under the WPCL, Plaintiffs are entitled to claim unpaid wages and liquidated damages pursuant to 43 P.S. §§ 260.9a-260.10.

186.     Pursuant to the WPCL, Defendants are further liable for the payment of attorneys' fees to Plaintiffs' counsel for pursuit of these claims.

## COUNT III
### Violation of the Pennsylvania Minimum Wage Act

187.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

188.     Defendants 20/20 Landscaping and Blair Curtis Cress, Jr. are employers subject to the PA MWA, as neither fall into any of the coverage exceptions outlined in that Act. *See* 43 P.S. § 333.105.

189.     Defendants' compensation scheme that is applicable to Plaintiffs failed to comply with 43 P.S. §§ 333.104(a) and (c), 34 PA. CODE §§ 231.1(b) and 43(b).

190.     Defendants failed to compensate Plaintiffs at a rate of one and one-half (1 ½) times their regular hourly wage for all hours worked in excess of forty (40) hours per week, in violation of 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

191.     Defendants failed to accurately track all of the hours that Plaintiffs worked.  *See* 43 P.S. § 333.108 and 34 PA. CODE § 231.31.

192.     Pursuant to 43 P.S. § 333.113, employers who fail to pay an employee wages in conformance with the PA MWA, shall be liable to the employee for the wages or expenses that were not paid, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT IV

### Breach of Contract

193.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

194.    Defendant 20/20 Landscaping entered into a separate seasonal contract of employment with each individual Plaintiff for each and every season that each individual Plaintiff was employed by Defendant 20/20 Landscaping pursuant to the H-2B Visa Program.

195.    Each party's acceptance of these contracts was supported by good and valuable consideration.

196.    Pursuant to the requirements of the U.S. DOL, contracts offered by Defendant 20/20 Landscaping to Plaintiffs were required to incorporate minimum terms and conditions of employment established by U.S. DOL.

197.    The minimum contractual terms on which employment was offered in each season by Defendant 20/20 Landscaping were specified by regulations and requirements of U.S. DOL including specific assurances on behalf of Defendant 20/20 Landscaping by Defendant Cress on the annual Form ETA-9142B Appendix B assurances annexed as Exhibits hereto. *See* Exhibits F, G, H, and I.

198.    In each relevant year Defendants' certifications on ETA Forms were executed under penalty of perjury by Defendant Cress on behalf of Defendant 20/20 Landscaping.

199.    Plaintiffs fulfilled their contractual obligations for each contract by traveling to the United States and laboring for Defendants.

200.    Defendant 20/20 Landscaping breached the terms of the annual contracts with Plaintiffs by failing to pay contractually established wages for all work performed by Plaintiffs.

201.     Defendant 20/20 Landscaping breached the terms of the annual contracts with Plaintiffs by deductions from wages and failure to pay required expenses as alleged above.

202.     When Plaintiffs and other similarly situated H-2B workers were assigned by Defendants to work on weekends, Defendants failed to include the hours worked and wages paid in payroll records and pay statements of the Defendants.

203.     In 2015 Defendant 20/20 Landscaping failed to pay Mr. Guillermo Lom and Mr. Sanchez at least the minimum promised prevailing wage during the weeks that they deducted or failed to reimburse impermissible pre-employment expenses from the workers' pay.

204.     Defendant 20/20 Landscaping breached the 2015 contract with Mr. Guillermo Lom by failing to pay the prevailing minimum wage for the work he completed as a tree trimmer.

205.     Defendant 20/20 Landscaping breached each and every contract with Mr. Rangel by failing to pay the prevailing minimum wage for the work he completed as a tree trimmer.

206.     In the years 2016, 2017, and 2018 Defendant 20/20 Landscaping breached its contracts with Plaintiffs by making unlawful deductions for rental charges for housing not offered in compliance with law and/or charging more than a "reasonable" amount for such housing as defined by U.S. DOL regulations.

207.     Defendant 20/20 Landscaping breached the 2018 contracts of employment with Plaintiffs by discriminating against them for asserting their rights under law.

208.     Defendants responded to Plaintiffs' July 2018 complaints and exercise of their rights by discriminating against Plaintiffs in the following ways: reducing the weekend work offered, intimidating Plaintiffs by attempting to end Mr. Guillermo Lom's contract, failing to

rehire Plaintiffs for the 2019 season and, upon information and belief, attempting to blacklist Plaintiffs to impede their ability to obtain other H-2B employment.

209.    Because of Defendant 20/20 Landscaping's breach of contract with Plaintiffs, Plaintiffs suffered from a loss of expected wages and income.

210.    Plaintiffs are entitled to monetary damages sufficient to place them in the financial position they would have been in but for Defendant 20/20 Landscaping's  breaches.

**COUNT V**

**Violations of Pennsylvania Common Law for Unjust Enrichment**

211.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

212.    By paying Plaintiffs below the required overtime wage for all hours worked, Defendants were unjustly enriched at the expense of and to the detriment of Plaintiffs.

213.    Benefits conferred on Defendants by Plaintiffs include, *inter alia*, their labor, for which Defendants paid a wage lower than that required by law.

214.    Defendants received this artificially cheap labor from Plaintiffs and therefore appreciated the benefit.

215.    This enrichment of Defendants was unjust and violates principles of justice, equity and good conscience.

216.    As a consequence of Defendants' unjust enrichment, Plaintiffs are entitled to the disgorgement of funds equal to the difference between the wages paid by Defendants and the actual value of their labor at statutorily required overtime wage rates.

## COUNT VI

### Violations of the Civil Rights Act of 1866 as Amended

217.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the

preceding paragraphs as if set forth herein.

218.    Defendants engaged in unlawful employment practices in violation of 42 U.S.C. §

1981 of the Civil Rights Act of 1866 as amended.

219.    42 U.S.C.§ 1981 at ¶ (a) provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every
> State and Territory to make and enforce contracts, to sue, be parties, give evidence, and
> to the full and equal benefit of all laws and proceedings for the security of persons and
> property as is enjoyed by white citizens, and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every kind, and to no other.

220.    42 U.S.C.§ 1981 at ¶ (b)  provides as follows:

> [T]he term ''make and enforce contracts'' includes the making, performance,
> modification, and termination of contracts, and the enjoyment of all benefits, privileges,
> terms, and conditions of the contractual relationship.

221.    Contracts of employment incorporate provisions required therein by federal and

state law.

222.    Plaintiffs are not U.S. citizens.

223.    Plaintiffs are non-white Latinos.

224.    By engaging in the practices complained of above, Defendants deprived Plaintiffs

of the rights to make and enforce contracts and to the full and equal benefit of all laws and

proceedings for the security of persons and property as is enjoyed by white citizens.

225.    Defendants deprived Plaintiffs of the right to make and enforce contracts by

retaliating against them and failing to rehire them for the 2019 landscaping season in an attempt

to prevent them from further enforcement of their contractual rights.

226.     At all times relevant to this matter, Defendants discriminated against Plaintiffs by failing to comply with the terms and conditions of employment guaranteed to the Mexican H-2B workers while complying with the similar terms and conditions of employment offered to white U.S. citizen workers. In so doing, Defendants acted with malice or reckless indifference to Plaintiffs' federally protected rights.

227.     Plaintiffs are entitled to compensatory damages, punitive damages, and attorneys' fees resulting from Defendants' denial of their equal rights to make and enforce contracts

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

1.   Award damages to Plaintiffs and other similarly situated H-2B workers for unpaid wages, together with statutory liquidated damages, in accordance with the FLSA;

2.   Award damages to Plaintiffs and other similarly situated H-2B workers for unpaid wages and statutory liquidated damages in accordance with the WPCL;

3.   Award damages to Plaintiffs for unpaid overtime wages, in accordance with the MWA;

4.   Award damages to Plaintiffs workers in accordance with their contract law claims;

5.   Award damages to Plaintiffs for unjust enrichment;

6.   Award compensatory and punitive damages to Plaintiffs in accordance with 42 U.S.C. § 1981;

7.   Enter declaratory judgment that the Defendants intentionally violated the rights of Plaintiffs and others similarly situated as set forth in the preceding paragraphs;

8.   Award attorneys' fees and costs to Plaintiffs; and

9.   Award such other relief, as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

Dated:  April 24, 2019

Respectfully submitted,

JUSTICE AT WORK

/s Lerae Kroon
Lerae Kroon (PA 325464)
JUSTICE AT WORK
5907 Penn Avenue Suite 320
Pittsburgh, PA 15206
Telephone: (412) 218-6886
lkroon@justiceatworklegalaid.org

Matthew J. Lamberti (PA 323452)
JUSTICE AT WORK
5907 Penn Avenue Suite 320
Pittsburgh, PA 15206
Telephone: (412) 208-6772
mlamberti@justiceatworklegalaid.org

Arthur N. Read (PA 29360)
JUSTICE AT WORK
990 Spring Garden St.
Philadelphia, PA 19106
Telephone: (215) 733-0878
aread@justiceatworklegalaid.org

*Attorneys for Plaintiffs*